IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:12CR-235

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| PHILLIP D. MURPHY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**THIS MATTER** is before the court on defendant's Motion to Dismiss (#56). Having considered the motion, reviewed the pleadings, and considered the arguments made in open court on September 11, 2013, the court enters the following findings, conclusions, and order.

**Findings and Conclusions**

**I.    Background**

A three count bill of indictment was entered in this case on July 19, 2012 charging defendant with 1) conspiracy to commit wire fraud and to defraud the United States in violation of 18 U.S.C. § 371; 2) a substantive wire fraud charge in violation of 18 U.S.C. § 1343; and 3) conspiracy to make false entries in bank records in violation of 18 U.S.C. §371.

Defendant is charged with participating in a bid-rigging scheme to control and manipulate the bidding process for municipal bond proceeds. In addition, the Indictment alleges that defendant and his co-conspirators agreed to make false entries in bank records by "falsify[ing] marketing profits on trade tickets." Indictment ¶ 36. Defendant moves to dismiss the Indictment on the grounds that the charges are barred by the applicable statutes of limitations.

In 2007 and 2008, before the indictment was entered, the government and defendant entered into two separate tolling agreements. Under these agreements, the period covered by the

1

tolling agreements would be excluded from calculating time "for the purpose of any statute of limitation" for certain charges. The parties agree that these agreements together tolled the statutes for a total of two years and eleven days. Defendant now moves to dismiss the indictment on the grounds that the charges are time-barred.

## II. Counts I and II

With respect to Counts I and II, the wire fraud charges, the issue appears to be whether the applicable statute of limitations is the ten year period by 18 U.S.C. §3293(2).[1] This provision extends the statute of limitations from five years to ten "if the offense affects a financial institution." Id. The indictment alleges that a financial institution was affected in that Bank of America, one of the co-conspirators and defendant's employer from 1998 to 2002, was made "susceptible to substantial risk of loss" as a result of the scheme and, in fact, the bank agreed to pay federal and state agencies over $137 million in settlements "as compensation for the losses incurred by those agencies and victims." Indictment ¶ 9. Defendant contends that this allegation is insufficient to bring the charges under the ten year statute and requests that the court dismiss these charges as time barred.

Relying on United States v. Ubakanma, 215 F.3d 421, 424 (4th Cir. 2000), defendant's principal argument is that exposure to risk of litigation expenses and settlement agreements does not constitute "affected," for purposes of § 3293(2). According to defendant, Ubakanma stands for the proposition that wire fraud "affected a financial institution *only if the institution itself were victimized by the fraud . . .*" Def.'s Mem. 26 (quoting Ubakanma, 215 F.3d at 426) (internal quotation marks omitted) (alterations in original). The court disagrees with defendant's interpretation and agrees with the government that the indictment successfully alleges that a

---

[1] "If a ten year statute of limitations does apply to the wire fraud conspiracy and wire fraud charge, then, taking into consideration the time excluded under the tolling agreements, the Indictment would be timely as to those charges." Def.'s Mem. 23.

2

financial institution was "affected" as contemplated by § 3293(2). First, the above quoted language is taken out of context. The complete sentence reads as follows: "The district court correctly concluded during Ubakanma's sentencing hearing that a wire fraud offense section 1343 "affected" a financial institution only if the institution itself were victimized by the fraud, as opposed to the scheme's mere utilization of the financial institution in the transfer of funds." Ubakanma, 215 F.3d at 426. Clearly the present case presents neither a "mere utilization" nor "financial institution as victim" scenario. Thus, the language cited by defendant highlights the fact that the Ubakanma court was not addressing the issue now before the court.

Instead, the court there was considering the aggravating circumstance in 18 U.S.C. 1343, which allows for increased punishment "if the violation affects a financial institution." Id. at 426. Relying on the fact that defendant's plea agreement included no facts illustrating such effect, the court reversed in part and remanded for further proceedings. In contrast, the indictment here specifically alleges a clear and cognizable effect: that Bank of America paid out settlements in the amount of $137 million as a direct result of the bid rigging scheme. Ind. ¶ 9. Language elsewhere in Ubukanma also cuts against defendant's argument. For example, the court explained that "the absence of facts showing that the fraud scheme in some way victimized *or affected* a financial institution," Ubukanma, 215 F.3d 426, which supports with the court's holding today that a financial institution can be affected without it also having been a victim.

Defendant also argues that because the settlement agreements between the government and financial institutions were not finalized until more than five years—according to defendant—after the alleged conspiracy terminated, the government cannot now "revive" the charges by "extracting" a settlement agreement from a bank to make use of §3293(2). Defendant is mistaken: the effect first occurred when the financial institution was exposed to risk of loss,

3

not when it chose to enter into any settlement agreement with the government. Such an interpretation is bolstered by cases cited by the government which have reached this issue.

In a case closely related to the present one, discussed by both parties in their briefs, a court from the Southern District of New York held that "[a] financial institution is affect[ed] by a fraudulent scheme where it actively participated in the scheme and experienced financial losses in the form of legal settlements and costs as a result of that participation." United States v. Rubin/Chambers, Dunhill Ins. Servs., 831 F. Supp. 2d 779, 783 (S.D.N.Y. 2011) (internal quotation marks omitted) (second alteration in original). In another case from the Seventh Circuit Court of Appeals, also discussed by both parties, the court affirmed a district court's instruction that a bank was affected if the defendant "exposed the financial institution[s] to a new or increased risk of loss. A financial institution need not have actually suffered a loss in order to have been affected by the scheme." United States v. Serpico, 320 F.3d 691, 694 (7th Cir. 2003). It is thus clear that defendant's interpretation of §3293(2) is overly restricted and inconsistent with that of courts that have addressed the issue.

Defendant then contends that application of § 3293(2) would violate his rights under the Ex Post Facto clause of the Constitution and the Due Process Clause of the Fifth Amendment. The court finds little merit in this argument as §3293(2) was very much in effect during the time of the alleged offense. See FINANCIAL INSTITUTIONS REFORM, RECOVERY, AND ENFORCEMENT ACT OF 1989, PL 101–73, August 9, 1989, 103 Stat 183 (adopting 10 year statute of limitations for crimes that "affect" a financial institution). And as explained above, the settlements entered into by the government and the banks did not "revive" the ten year statute as defendant argues, rather, the ten year statute was and has been applicable from the beginning of the conspiracy when—as a result of the alleged conduct—Bank of America and other financial

institutions were first exposed to risk of loss.  That this exposure precipitated settlements entered into in 2010 and 2011, much later, indeed years after the initial risk of loss, is not determinative.

Defendant makes a similar argument that the tolling agreements do not apply to Counts 1 and 2 as the statute had expired by the time they were entered into in 2010 and 2011. While the tolling agreements does specifically exclude charges for which the statute of limitations had "otherwise expired . . . prior to the date of this Agreement," the charges in Counts 1 and 2 had not yet expired.  At the time the parties entered into the tolling agreements, the ten year statute of limitations was applicable as the effect on the financial institution had already occurred.

Defendant has cited no authority on which this court could faithfully rely in granting the requested relief.  The court agrees with the government's interpretation and will deny defendant's motion as to Counts I and II.

### III.     Count III

Defendant contends that Count III of the Indictment is time barred because the charges contained in this count were not included in the two tolling agreements.  In the two tolling agreements, defendant and the government agreed to exclude two years and eleven days from "any calculation or computation of time for the purposes of any statute of limitations applicable to the potential charges referred to" in the tolling agreements.[2]  ECF Nos. 68-7, 8.  The parties appear to agree that if the tolling agreements apply to Count III then the charges are timely as the Indictment was filed within 12 years and eleven days of the final act of the conspiracy, or ten years under the statute of limitations plus the time excluded under the agreements.  The issue thus appears to be over scope of the agreements.  Paragraphs one and two, which cover the scope of the agreements, read as follows:

---

[2] The two tolling agreements contain identical language.  The first was signed on May 21, 2007and excluded time from then until June 1, 2008.  The second was signed on April 1, 2008 and extending the tolling period through June 1, 2009.

5

> WHEREAS, the United States has been conducting an investigation to determine whether entities and individuals unreasonably restrained trade by rigging bids and allocating contracts, and otherwise fraudulently restricted competition for, or fraudulently represented the fair market value of, certain contracts related to municipal bonds, in violation of the Sherman Act 15 U.S.C. § 1 (restraint of trade), 18 U.S.C. § 371 (conspiracy to defraud the United State or to violate the laws of the United States), 18 U.S.C § 1341 and 1343 (mail and wire fraud), 18 U.S.C. § 1346 (honest services), and 18 U.S.C. § 1349 (conspiracy to commit mail or wire fraud ) (hereinafter referred to as "the subject acts") throughout the United States; and
>
> WHEREAS, the United States has indicated that it may seek to obtain an indictment against Phillip D. Murphy for violations of federal criminal laws based upon the subject acts;

Id.

Defendant is charged with conspiring to make false entries in bank records in violation of 18 U.S.C. § 371, he is not however charged with the underlying substantive crime of making false entries in bank records in violation of 18 U.S.C. § 1005. The indictment alleges defendant and his co-conspirators agreed to falsify marketing profits on trade tickets for certain investment agreements.[3] Ind. ¶ 36(a). By making such false entries, defendant and his co-conspirators were able to accumulate money in a "kitty," and such funds were then paid as "kickbacks" to brokers who had helped manipulate the bidding process alleged in Counts 1 and 2. As such, as the government points out, the charges contained in Count III are clearly related to and connected with the other charges in the indictment.

Defendant argues that the tolling agreements do not cover Count III as "[n]o reading of the tolling agreements allows for the inclusion of falsifying bank records within the meaning of the covered 'subject acts.'" Def.'s Mem. 31. The tolling agreements do not specifically cite 18 U.S.C. § 1005, the criminal object of the Count III conspiracy, nor do they mention the "alleged conduct of falsifying bank records." Id.

---

[3] Trade tickets are "internal reporting document[s] . . . [which] are created in connection with erach investment agreement or other municipal finance contract." Ind. ¶ 31.

The government argues that the tolling agreements do apply because they specifically mention 18 U.S.C. §371, the offense with which defendant is charged. The third paragraph of the agreements explains that the tolling agreements exclude time for the *charges* enumerated in the agreements' opening paragraph, one of which is 18 U.S.C. § 371. Because the charge contained in Count III is enumerated in the opening paragraph, the government contends, the tolling agreements clearly apply. Furthermore, the government contends that the charges contained in Count III are "related to and based upon the fraudulent and anticompetitive conduct then under investigation, that is set out in Paragraph One of both tolling agreements." Govt.'s Mem. 21.

The court agrees with the government that the tolling agreements do apply to Count III, but does so for the following reasons. The court notes that the first paragraph of the agreements explained that the United States was investigating whether certain individuals "fraudulently represented the fair market value of certain contracts related to municipal bonds, in violation of . . . 18 U.S.C. § 371," in addition to whether those same individuals participated in a bid rigging scheme related to those same municipal bonds. The government was investigating whether defendant had indeed participated in the acts, thereby violating certain enumerated statues, one of which was § 371.

The charges contained in Count III of the indictment allege that defendant and co-conspirators falsified the value of the investment agreements on, among other places, the trade tickets which were eventually used by defendant's employer to estimate the value of those contracts. Ind. ¶ 36(a). This alleged conduct falls within the second clause of the conduct which the government was investigating at the time of the tolling agreements: the fraudulent misrepresentation of the fair market value of certain contracts related to municipal bonds.

7

Notably, Count III of the Indictment is the only charge that alleges that defendant actually misrepresented the value of the investment agreements. The charges in Counts I and II allege that defendant manipulated the bidding process for such investment agreements and that such agreements were eventually obtained by Financial Institution A at artificially depressed rates, but nowhere do these Counts allege that defendant misrepresented the value of the investment agreements that Financial Institution A obtained. Accordingly, were the court to hold that the tolling agreements do not apply to Count III, it would, in effect, be nullifying language contained in such agreements.

While the court cannot say that the mere inclusion of the statute under which defendant is charged (18 U.S.C. § 371) is necessarily sufficient for the tolling agreements to apply to Count III, the court agrees that the tolling agreements apply here because they contain both the alleged conduct and the statute. Thus, the only deficiency that the tolling agreements arguably contain with respect to this Count is that they fail to mention 18 U.S.C. 1005, the statute prohibiting the criminal object of the alleged conspiracy. But because defendant is not charged with that statute and because the underlying allegations are included, such omission does not render the tolling agreements inapplicable to this count.

**IV.     Double Jeopardy**

Defendant also argues that Count III should be dismissed as "multiplicitous with Count One." Def.'s Reply 27. "Double jeopardy bars a succeeding prosecution if the proof actually used to establish the first offense would suffice to convict the defendant of the second offense. United States v. Burns, 990 F.2d 1426, 1434 (4th Cir. 1993)." "Multiplicity . . . is the charging of a single offense in several counts. The signal [sic] danger in multiplicitous indictments is that the defendant may be given multiple sentences for the same offense; hence reversal is warranted

if the defendant actually was convicted on multiplicitous counts and subjected to multiple punishments." Id. (internal quotation marks omitted). Relying on the five factor test set forth in United States v. MacDougall, 790 F.2d 1135, 1143-44 (4th Cir. 1986), defendant contends that Count III is essentially a "subsidiary scheme of the master conspiracy charged in Count One." Def.'s Reply 30. Having reviewed the complaint, the court is satisfied that the indictment charges two separate conspiracies.

Defendant's reliance on United States. v. Rigas, 605 F.3d 194 (3rd Cir. 2010) is misplaced. There, the Third Circuit Court of Appeals remanded a case to the District Court for an evidentiary hearing on whether two conspiracies sufficiently overlapped to violate the Double Jeopardy Clause after it held that the defendants had made a sufficient showing for such a hearing. Id. at 203. But there are substantial and meaningful distinctions between the facts of that case and the allegations in the present one. Defendant contends because the overt acts in Counts I and III "overlap," the nature and scope of Count III is "entirely subsumed by the Count One conspiracy." Def.'s Reply 30. Defendant principally relies on the $70,000 that was allegedly paid as a "kickback" to CDR for its involvement in the bid rigging scheme. This money was procured through the illegal "kitty" alleged in the Count III conspiracy. However, the similarities of the overt acts in the two conspiracies in Rigas go far beyond merely overlapping. There, "[b]oth indictments seem to allege conversion of the same assets, by the same means, in the same transactions." Id. at 216. In contrast, in the present case, while the Count III conspiracy may have helped effectuate the Count I conspiracy, the overt acts alleged in both are quite distinct. One conspiracy was for rigging the bidding process for municipal bonds while the other was to make false entries in bank records. At this point, the court finds these to be two substantially distinct conspiracies. The court will deny the motion without prejudice,

however, as additional evidence procured at trial may require the court to revisit this matter voir dire.

## ORDER

**IT IS, THEREFORE, ORDERED** that defendant's Motion to Dismiss (#56) is **DENIED** as to the Statute of Limitations issues but **DENIED WITHOUT PREJUDICE** as to the Double Jeopardy concern. Defendant is free to make that motion again at the close of trial.

Signed: October 15, 2013

Max O. Cogburn Jr.
United States District Judge